IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| ELIAS NYSTROM, | |
| Plaintiff, | Case No. 3:20-cv-00098-JMK |
| vs. | |
| KHANA MARINE LTD.; NOK CO. LTD. S.A., *in personam*; and the M/V SUAH, Official Number 43379-12-B, her engines, winches, gear, and appurtenances, *in rem*, | **ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Before the Court is Defendants' *Motion for Summary Judgment*.[1]  Plaintiff opposed Defendants' motion,[2] and Defendants replied to Plaintiff's opposition.[3]  Oral argument was not requested and is not deemed necessary.  For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

---

[1] Docket 34.
[2] Docket 35.
[3] Docket 36.

# I. BACKGROUND

The parties represent to the Court that the material facts in this case are not in dispute.[4] On April 29, 2017, Plaintiff began a shift as a longshore worker employed by Pacific Stevedoring ("PacSteve") in Dutch Harbor, Alaska.[5] Defendants hired PacSteve as a stevedore to discharge from the M/V SUAH (the "Vessel") cargo consisting of packages of frozen fish weighing approximately 50 to 55 pounds each.[6] Plaintiff's shift was scheduled to last approximately 18 hours, beginning at 3:15 p.m. local time on April 29, 2017, and ending on April 30, 2017.[7]

Plaintiff began his shift by working without incident in two "holds" of the Vessel.[8] At some time around or before 3:00 a.m. on April 30, Plaintiff entered a third hold ("Hold 3") of the Vessel.[9] Prior to entering Hold 3, Plaintiff's supervisor, PacSteve gang boss Joel Gumera, warned Plaintiff and his fellow longshore workers that conditions

---

[4] *See* Docket 35 at 4 ("Plaintiff does not contest the bulk of Defendants' summary of relevant facts, [sic] but does issue with certain conclusions and generalities masquerading as facts."); Docket 36 at 1 ("The parties agree on the material facts."). Despite acknowledging that the parties appear to agree on the material facts, Plaintiff argues that Defendants "draw false conclusions based upon inference" and paint a "misleading picture" of the facts. Docket 35 at 2, 4. Because Defendants do not challenge Plaintiff's recitation of the material facts as articulated in Plaintiff's opposition to Defendants' summary judgment motion, and for the purposes of reciting the facts in this order, the Court largely will describe the factual allegations as they are set forth in Plaintiff's opposition at Docket 35 and Verified Amendment Complaint at Docket 4.

[5] Docket 4 at 2–3 ¶¶ 8, 11–12 (V. Am. Compl.).

[6] *Id.* at 3 ¶¶ 11, 13. At the time of the events giving rise to Plaintiff's complaint, Defendant Nok Co. Ltd. S.A. owned the Vessel, and Defendant Khana Marine Ltd. managed the Vessel. Docket 15 at 2 ¶¶ 2–3 (Defs.' Answer).

[7] Docket 4 at 3 ¶ 12.

[8] Docket 35 at 3.

[9] *Id.* at 3–4.

*Nystrom v. Khana Marine Ltd., et al.*                                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                               Page 2

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 2 of 32

would be "really icy" and that the hold "was going to be a mess."[10]  Earlier, at the start of

his shift on April 29, Plaintiff had participated in a customary safety meeting during which

Gumera discussed the potential for the PacSteve longshore workers to experience "frozen

and slippery conditions."[11]  According to Plaintiff, Gumera warned the longshore workers

about the conditions in Hold 3 because the hold had "been just opened" about 45 minutes

prior to the longshore workers' entry, meaning that the hatches securing the frozen cargo

and refrigerated portions of the Vessel were exposed to the elements beginning around or

shortly after 2:00 a.m. on April 30.[12]  The Vessel's captain, Pyong Ho Chong, testified that,

at 10:00 p.m. on April 29, his crewmembers turned off the refrigeration units that help keep

the temperatures in Hold 3 low and, in turn, the cargo frozen.[13]  The record suggests, and

neither party disputes, that the temperature in Hold 3 may have remained around or below

freezing when Plaintiff and his colleagues first entered the hold.[14]

---

[10]  Docket 34-2 at 12:2–9 (Nystrom Dep.).  Defendants provided local climatological data
from the National Oceanic and Atmospheric Administration ("NOAA") indicating that the
temperature in Dutch Harbor on April 29 and April 30 ranged from a low of 36 degrees to a high
of 49 degrees Fahrenheit, with approximately 0.39 inches of precipitation taking the form of "rain,
melted snow, etc." falling on April 29 and approximately 0.16 inches of precipitation taking the
form of "rain, melted snow, etc." falling on April 30.  Docket 34-2 at 78 (Record of Climatological
Observations).  On April 29, the NOAA data identifies measurable precipitation in the morning
hours and minimal or trace amounts of precipitation around 2:00 and 3:00 p.m., immediately
before Plaintiff's shift began.  *Id.* at 84.  However, the NOAA data is "missing" how much
precipitation, if any, fell in Dutch Harbor between 4:00 p.m. on April 29 and 2:00 a.m. on April 30,
although it indicates that trace amounts of precipitation fell between 3:00 a.m. and 6:00 a.m. on
April 30.  *Id.*
[11]  Docket 34-2 at 9–10.
[12]  *Id.* at 8:16-17, 12:23–24.
[13]  Docket 34-2 at 62, 67:10–17 (Chong Dep.).
[14]  *See* Docket 34-1 at 4–5 ¶ 14 (Murphy Decl.) ("[T]he cargo holds are chilled before
cargo operations begin, so the temperature of the cargo decks may be below freezing when the
cargo operations start.  If the outside temperature is near freezing, the cargo temperature in the
cargo hold may remain below freezing for several hours after the cargo hold has been opened.").

*Nystrom v. Khana Marine Ltd., et al.*                                                        Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                        Page 3

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 3 of 32

Gumera's warning was prescient. After entering Hold 3, Plaintiff and his colleagues discovered what Plaintiff estimates to have been "approximately two to three millimeters" of ice on the longshore workers' walking surface.[15] Plaintiff reports that several of his more experienced colleagues expressed complaints to the Vessel's crewmembers about the icy and slippery condition of Hold 3.[16] He describes their complaints as follows:

> And the biggest complaint that night was, "It's a slippery hold. We should not be in here. This is not right. This is not right. We can't push our product from one side of the hold to the other side of the hold without slipping." That was our biggest complaint that night. "This is a slip hazard."[17]

Despite some conversation between the PacSteve longshore workers and the Vessel's crewmembers concerning the ice, the longshore workers began working in Hold 3.[18] As they worked, two crewmembers—who were employed by or at least under the control of one or both Defendants—were present with the longshore workers and actively engaged in "de-icing" the walking surface as the longshore workers worked.[19] The crewmembers used "large wooden mallets or hammers . . . to break up the ice" present on

---

[15] Docket 35 at 3. The parties dispute whether Plaintiff and his colleagues were standing directly on the floor of Hold 3 or on top of cargo stacked in Hold 3, but Defendants contend that this dispute is immaterial and, in any event, acknowledge for the purposes of their motion that Plaintiff slipped on ice. Docket 34 at 3, 11. The Court is aware of this dispute and agrees with Defendants that it is immaterial. Regardless, the Court simply will refer to the "walking surface" in Hold 3 upon which Plaintiff was present at the time of the events giving rise to his claims.

[16] Docket 35 at 3.

[17] Docket 34-2 at 8:6–11.

[18] *Id.* at 13, 19–20. Plaintiff testified that these conversations took place in a foreign language that he could not understand. *Id.* at 19:9–13.

[19] Docket 35 at 3.

*Nystrom v. Khana Marine Ltd., et al.*     Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment     Page 4

Case 3:20-cv-00098-JMK     Document 37     Filed 02/15/23     Page 4 of 32

the walking surface and "sweep it to the side."[20]  Notwithstanding their efforts, at least some ice remained on the walking surface of Hold 3 at around 3 a.m. when Plaintiff picked up a package of frozen fish, began walking, slipped, and fell.[21]  Plaintiff contends that he "suffered immediate pain" from a dislocated shoulder that he "pushed . . . back into place" before stopping work and reporting the injury to his supervisor.[22]

Plaintiff received treatment for his injury over the course of the following year, which culminated in surgery and his participation in a comprehensive rehabilitation program.[23]  Plaintiff alleges that he now must live with restrictions preventing him from returning to his previous occupation.[24]  He filed this negligence suit, seeking compensation for his injuries under Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA" or the "Act"), 33 U.S.C. § 905(b).[25]  After conducting discovery, Defendants brought this motion for summary judgment, seeking dismissal of all of Plaintiff's claims with prejudice.[26]

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden

---

[20]  *Id.* at 3–4.
[21]  *Id.* at 4.
[22]  Docket 4 at 3 ¶¶ 14–16.
[23]  *Id.* at 4–5 ¶¶ 25, 27–29.
[24]  *Id.* at 5 ¶¶ 30–32.
[25]  *Id.* at 4.
[26]  Docket 34.

*Nystrom v. Khana Marine Ltd., et al.*                                        Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 5
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 5 of 32

of showing that "there is an absence of evidence to support the nonmoving party's case."[27] If the moving party meets this burden, the burden shifts to the non-moving party to "designate 'specific facts showing that there is a genuine issue for trial.'"[28] The non-moving party cannot rely on "mere allegations or denials"; instead, the evidence must be such "that a reasonable jury could return a verdict for the nonmoving party."[29]

To support or defend against a motion for summary judgment, the parties must: (1) cite to particular portions of materials in the record, including, but not limited to, depositions, documents, declarations, or other discovery materials; or (2) demonstrate that the materials cited fail to establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support a factual allegation.[30] A court may, but need not, consider materials in the record to which the parties do not cite.[31] A court's focus should be on the admissibility, rather than the form, of the substance of evidence offered.[32]

In reviewing the record on a motion for summary judgment, a court must "view the facts and draw reasonable inferences" in the light most favorable to the non-moving party.[33] If "both parties assert[] that there are no uncontested issues of material

---

[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[28] *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quoting Fed. R. Civ. P. 56(e)).
[29] *Anderson*, 477 U.S. at 248 (citations omitted).
[30] Fed. R. Civ. P. 56(c)(1).
[31] Fed. R. Civ. P. 56(c)(3); *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).
[32] *See Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) ("At summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial.") (citation and internal quotation marks omitted).
[33] *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted).

*Nystrom v. Khana Marine Ltd., et al.*                                      Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 6

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 6 of 32

fact," a court still must "determine whether disputed issues of material fact are present."[34] However, when the non-moving party's version of the facts is "blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'"[35] Similarly, no genuine dispute exists "where the only evidence presented is 'uncorroborated and self-serving' testimony."[36]

## III.  DISCUSSION

Plaintiff's negligence claim is premised on two duties—and their corollaries—that he alleges Defendants owed him pursuant to the LHWCA:  the turnover duty and the active control duty.[37]  Plaintiff claims that Defendants breached these duties of reasonable care by failing to "provide a deck free from the hazards of ice despite taking on the affirmative obligation to do so."[38]  Defendants acknowledge the existence of the turnover and active control duties, but contend that, under the circumstances of this case, they do not equate to a duty to ensure that the holds in which Plaintiff worked would be free of ice.[39]  The Court provides a brief overview of the limited duties established by the

---

[34] *United States v. Fred A. Arnold, Inc.*, 573 F.2d 605, 606 (9th Cir. 1978).

[35] *Scott*, 550 U.S. at 380.

[36] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996)) (citing *Johnson v. Washington Metro. Transit Auth.*, 883 F.2d 125, 128 (D.C. Cir. 1989)); *see also Oakley, Inc. v. McWilliams*, 584 Fed. App'x 528, 529 (9th Cir. 2014) (citations omitted) ("[A party's] self-serving and uncorroborated declarations . . . are insufficient to avert summary judgment.").

[37] Docket 4 at 4 ¶¶ 20–23; Docket 35 at 4.

[38] Docket 35 at 2.

[39] Docket 34 at 3.

*Nystrom v. Khana Marine Ltd., et al.*                                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                          Page 7

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 7 of 32

LHWCA and then addresses the parties' arguments concerning each alleged duty and its applicable corollaries in turn.

## A.    The LHWCA and a Vessel Owner's Limited Duties

The LHWCA established a statutory scheme pursuant to which a longshore worker's employer, typically the stevedoring company, bears responsibility for providing a "reasonably safe" place of employment to its longshore workers.[40]  However, the Act allows a longshore worker to recover from a vessel when the vessel's negligence causes the longshore worker harm.[41]  In the years following the LHWCA's enactment, the Supreme Court defined, and the lower courts applied, the limited duties of care that vessels owe longshore workers under Section 905(b).[42]  The Supreme Court identified three primary duties:

> The first, which courts have come to call the "turnover duty," relates to the condition of the ship upon the commencement of stevedoring operations.  The second duty, applicable once stevedoring operations have begun, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the "active control of the vessel."  The third duty, called the "duty to intervene," concerns the vessel's obligations with regard to cargo operations in areas under the principal control of the independent stevedore.[43]

---

[40]  33 U.S.C. § 941(a).

[41]  33 U.S.C. § 905(b).  The Act's definition of "vessel" includes the vessel's owners, agents, operators, masters, officers, and crewmembers.  33 U.S.C. § 902(21).

[42]  *See generally Scindia Steam Nav. Co. v. De Los Santos*, 451 U.S. 156 (1981) (outlining history of the 1972 amendments to the LHWCA and general nature of the duties left for the courts to develop); *Murray v. S. Route Mar. SA*, 870 F.3d 915, 918–19 (9th Cir. 2017) (applying the turnover duty); *Scheuring v. Traylor Bros.*, 476 F.3d 781, 788 (9th Cir. 2007) (citations omitted) ("The Supreme Court has indicated that Congress left to the courts the task of defining the vessel owner's duty of care.").

[43]  *Howlett v. Birkdale Shipping Co.*, 512 U.S. 92, 97–98 (1994) (quoting *Scindia*, 451 U.S. at 167–68).

*Nystrom v. Khana Marine Ltd., et al.*                                          Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                        Page 8

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 8 of 32

The Ninth Circuit Court of Appeals has delineated the "five distinct aspects" of these duties as: (1) the turnover duty of safe condition; (2) the turnover duty to warn; (3) the active involvement duty; (4) the active control duty; and (5) the intervention duty.[44] However, courts generally construe the active involvement and active control duties as one.[45]

Both aspects of the turnover duty and the active control duty are at issue here.[46] Plaintiff also appears to allege in his opposition that Defendants' conduct implicated two other categories of duties: (1) "duties established under contract and local custom and practice when [Defendants'] turned over the Vessel with an unreasonably icy, slippery hold," and (2) a "duty to the crew of longshoremen to keep the hold clear of ice hazards" that arose when Defendants "affirmatively undert[ook] the task of de-icing the hold while the longshoremen worked."[47] Because courts have not recognized the existence of other duties beyond those mentioned above,, and Plaintiff does not expressly delineate these as separate duties in his complaint, the Court will consider these alleged duties, to

---

[44] *Bjaranson v. Botelho Shipping Corp., Manila*, 873 F.2d 1204, 1207 (9th Cir. 1989) (citing *Scindia*, 451 U.S. 156).

[45] *See Howlett*, 512 U.S. 92, 98 (1994) (describing a singular duty applicable to events occurring once stevedoring operations begin); *Christensen v. Georgia-Pacific Corp.*, 279 F.3d 807, 812 (9th Cir. 2002) (citations omitted) ("[A] vessel owes three duties to its stevedores: the turnover duty, the active control duty, and the intervention duty."). For the purposes of this order, the Court will refer simply to the "active control duty," rather than both the active control and active involvement duties.

[46] Docket 4 at 4 ¶¶ 20–23; Docket 34 at 20; Docket 35 at 4.

[47] Docket 35 at 2.

*Nystrom v. Khana Marine Ltd., et al.*                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 9
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 9 of 32

the extent they exist, within the confines of the turnover and active control duties primarily at issue.[48]

## B.     The Turnover Duty

The turnover duty concerns the condition of the vessel at the time stevedoring operations begin.[49]   This duty is twofold in nature.   It entails a duty to ensure that the vessel's condition at the time of turnover is acceptable (*i.e.*, the "turnover duty of safe condition") and a duty to warn the stevedore of any hazards that the vessel should reasonably expect the stevedore to face (*i.e.*, the "turnover duty to warn").   As the Supreme Court explained:

> This duty extends at least to exercising ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property, and to warning the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.[50]

The twin turnover duties do not require a vessel owner to eliminate *all* hazards before turning over the vessel, but the vessel must be free of hazards that would

---

[48]   *See* Docket 4 at 4 ¶¶ 20–23 (omitting express references to contract, local custom, practice, or affirmative actions); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (citations omitted) ("[Where] the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court.").

[49]   *Howlett*, 512 U.S. at 98 (citing *Scindia*, 451 U.S. at 167).

[50]   *Scindia*, 451 U.S. at 166–6 (citing *Marine Terminals v. Burnside Shipping Co.*, 394 U.S. 404, 416 n.18 (1969)).

*Nystrom v. Khana Marine Ltd., et al.*                                          Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 10
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 10 of 32

prevent an expert and experienced stevedore from carrying on its operations "in a reasonably safe manner."[51]  To the extent a hazard is "obvious," it cannot "present . . . an unreasonably dangerous work environment to experienced longshoremen exercising reasonable care."[52]

When a hazard is not obvious, the turnover duty to warn often is implicated. This duty, as applied to non-obvious conditions, "is a narrow one."[53]  It extends to "latent hazards . . . that would be neither obvious to nor anticipated by a competent stevedore in the ordinary course of cargo operations."[54]  Such hazards either must be "known to the vessel" or "should be known to it in the exercise of reasonable care."[55]  In the absence of actual knowledge, a vessel must provide a warning "only if the exercise of reasonable care would place upon the shipowner an obligation to inspect for, or discover, the hazard's existence."[56]  Vessels have no duty "to supervise or inspect ongoing cargo operations for the benefit of longshoremen."[57]

Courts applying these principles repeatedly have determined that the question of whether a vessel acted reasonably typically "is inappropriate for resolution at

---

[51] *Thomas v. Newton Int'l Enters.*, 42 F.3d 1266, 1269 (9th Cir. 1994) (citing *Bjaranson*, 873 F.2d at 1208).

[52] *Id.* (quoting *Martinez v. Korea Shipping*, 903 F.2d 606, 610 (9th Cir. 1990)).

[53] *Howlett*, 512 U.S. at 105.

[54] *Id.* at 99.

[55] *Scindia*, 451 U.S. at 167.

[56] *Howlett*, 512 U.S. at 100 (citing *Kirsch v. Plovidba*, 971 F.2d 1026, 1029 (3d Cir. 1992)).

[57] *Id.* at 102.

*Nystrom v. Khana Marine Ltd., et al.*                                                                 Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                                  Page 11
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 11 of 32

the summary judgment stage."[58]   Indeed, "[s]ummary judgment is rarely granted in negligence cases.  Whether the defendant acted reasonably is ordinarily a question for the trier of fact."[59]

Here, Plaintiff alleges that Defendants breached both the turnover duty of safe condition and the turnover duty to warn.[60]  The Court begins its analysis by focusing on the only "hazard" underlying Plaintiff's claims:  the presence of ice on the walking surface of Hold 3.[61]  Notably, the record does not reveal the precise condition of Hold 3's walking surface at the time the crewmembers turned the Vessel over to PacSteve.  Nor does the record clearly indicate at what time the crewmembers turned over the Vessel, although Defendants contend turnover occurred "[s]everal hours" before Plaintiff slipped and fell.[62]  It is possible, as Defendants note in their motion, that no ice was present on the walking surface of Hold 3 when the Vessel was turned over.[63]  However, the parties do not dispute that ice was present on the walking surface of Hold 3 by the time Plaintiff entered the hold and, approximately 15 minutes later, slipped and fell.[64]  In light of this uncertainty and the Court's mandate to view the facts in the light most favorable to Plaintiff, the Court will

[58]   *Thomas*, 42 F.2d at 1269; *see also Scheuring*, 476 F.3d at 791 (first citing *Thomas*, 42 F.3d at 1269; and then citing *Martinez*, 903 F.2d at 609) ("[T]he question [of] whether a defendant acted reasonably is ordinarily a question for the trier of fact.").

[59]   *Martinez*, 903 F.2d at 609 (citations omitted).

[60]   Docket 4 at 4 ¶ 22.

[61]   *See generally* Docket 4; Docket 35.

[62]   Docket 34 at 12.   It appears from Captain Chong's deposition testimony that the crewmembers turned over the Vessel at or before approximately 11:15 p.m. on April 29 since that is when "the loading began." Docket 34-2 at 57:5–7.

[63]   Docket 34 at 13.

[64]   *See* Docket 34 at 3 ("Defendants do not dispute that Plaintiff slipped on ice."); Docket 35 at 4 (recounting Plaintiff's fall).

*Nystrom v. Khana Marine Ltd., et al.*                                                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                                          Page 12
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 12 of 32

infer for the purposes of this order that Hold 3's walking surface was icy when the crewmembers turned the Vessel over to PacSteve.[65]

Assuming Hold 3 was icy at the time of turnover and remained icy when Plaintiff entered the hold at around 3:00 a.m. on April 30, the Court considers whether Defendants breached the turnover duty of safe condition. The question, as set forth above, is whether Defendants exercised "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property."[66] In a case such as this, where the issue is whether an expert and experienced stevedore working in Dutch Harbor would be able to safely work on an icy walking surface, the trier of fact may determine the applicable standard of care with the assistance of testimony from "an expert and experienced stevedore."[67]

Defendants provided such assistance in the form of a declaration from PacSteve President Andrew Murphy, who employed Plaintiff.[68] Murphy establishes himself as an expert stevedore from his involvement in PacSteve's operations and business dealings since 2005, where he gained extensive experience as a longshore worker who

---

[65] Because the Court construes this fact in Plaintiff's favor and Defendants do not contest it, this factual issue is not a genuine dispute of a material fact for the purposes of summary judgment under Rule 56.

[66] *Scindia*, 451 U.S. at 167.

[67] *Cf. Thomas*, 42 F.3d at 1269–70 (reversing district court's exclusion of expert testimony regarding the hazardousness of an unguarded hatch opening from the perspective of an experienced longshore worker); *Ingersoll v. Newport Petroleum, Inc.*, No. A03-65 CV (JWS), 2004 WL 3363407, at *2 (D. Alaska Sept. 30, 2004) (discrediting expert as unqualified to testify as to dangerousness of an icy deck).

[68] Docket 34-1.

*Nystrom v. Khana Marine Ltd., et al.*                                     Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 13
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 13 of 32

stowed cargo of frozen seafood in reefer vessel cargo holds in Dutch Harbor "many times."[69]  Murphy's declaration details at length the regularity with which PacSteve longshore workers in Dutch Harbor "routinely" face icy and slippery conditions.[70] Although the declaration, like much of Defendants' recitation of the facts of this case, speaks at a high level of generality, it establishes the circumstances in which an expert and experienced longshore worker in Dutch Harbor typically is able to work safely.  Murphy states that longshore workers "are experienced in [icy] conditions and trained to work safely around them and, if it is not possible to work around these conditions, to ensure that the ice is safely cleared before continuing their work."[71]  He also describes the methods longshore workers typically employ to mitigate the impact of, or remove to the fullest extent possible, icy conditions that present unavoidable hazards.[72]  These practices include reporting slippery conditions to the gang boss; wearing proper equipment, such as boots with non-skid soles; using trolleys to transport cargo; and using tools provided by the crewmembers to break and clear the ice.[73]  Murphy acknowledges that a vessel's crewmembers may, at times, assist with ice removal, "[b]ut the responsibility for removing ice that has formed on a cargo hold deck lies with the gang boss, not with the ship's crew."[74]

        The Court finds that Murphy is "an expert and experienced stevedore" qualified to testify as to the reasonableness of the conditions in Hold 3 during the times

---

[69] *Id.* at 2 ¶¶ 4–5.
[70] *Id.* at 5 ¶ 16.
[71] *Id.*
[72] *Id.* at 6–8 ¶¶ 19, 21, 23, 25.
[73] *Id.*
[74] *Id.* at 7 ¶ 21.

*Nystrom v. Khana Marine Ltd., et al.*                                                     Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                            Page 14
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 14 of 32

relevant to this case. His testimony establishes a strong presumption of the standard care a stevedore can expect from a reefer vessel's crewmembers during cold-weather conditions in Dutch Harbor, which stands in stark contrast to the standard of care Plaintiff alleges exists. In fact, Plaintiff offers no expert declaration or testimony establishing the standard of care expected by a reefer vessel operating in Dutch Harbor, nor does Plaintiff attempt to cast doubt on Murphy's declaration and its conclusions.[75] Instead, the crux of Plaintiff's argument for why Defendants breached the turnover duty is that they "made an affirmative undertaking to remove the ice on the floor of the hold in question," an obligation Plaintiff claims they failed to satisfy since the crewmembers were unable to remedy the icy conditions leading to his slip and fall.[76]

Plaintiff cites two cases[77] to support his "affirmative undertaking" argument: *Bunn v. Oldendorff Carriers GmbH*,[78] and *Lieggi v. Maritime Co. of the Philippines*.[79] Both cases fairly support the proposition that a vessel may be liable when its crewmembers act negligently in an affirmative undertaking intended to remove a hazardous condition. As the Second Circuit explained in *Lieggi*:

> [B]y making this affirmative undertaking, the owner eliminated any possible reasonable basis for relying on the stevedore to correct the hazardous condition. Indeed, predictably, the shipowner's undertaking to correct the condition lulled the stevedore into inaction: the hatch boss testified that although he might normally have taken steps to correct the condition, he did not do so "because the mate said

---

[75] *See generally* Docket 35.
[76] Docket 35 at 10.
[77] Docket 35 at 9–10.
[78] 723 F.2d 454 (4th Cir. 2013).
[79] 667 F.2d 324 (2d Cir. 1981).

*Nystrom v. Khana Marine Ltd., et al.*                                      Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 15
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 15 of 32

he was going to come and have that wiring removed." In the circumstances of the present case, the question of shipowner negligence could not properly have been taken from the jury.[80]

It appears that the Ninth Circuit would be inclined to apply a similar rule. Although not involving an affirmative obligation or promise made to a stevedore at the time immediately preceding a vessel's turnover, *Bueno v. United States*,[81] involved a somewhat analogous situation. There, the plaintiff, a contractor, alleged that a shipowner "voluntarily undertook to check the safety of the vessel on a regular basis, making inspections from time to time" during a sandblasting operation but failed to correct the improper placement of a floodlight that caused a fire resulting in the plaintiff's injuries.[82] The court ruled that the shipowner's affirmative undertaking of regular inspections should have alerted it to the potential fire hazard, and so a genuine issue of material fact existed as to whether its failure to notice the danger and correct it constituted negligence for which the shipowner was liable to the injured contractor.[83]

Even more applicable to the facts at hand is *Ollestad v. Greenville Steamship Corp.*,[84] where a ship's crewmembers uncovered the ship's hatches and stacked the hatch covers on the weather deck—"a job normally performed by longshoremen"—immediately prior to turnover.[85] In doing so, the crewmembers left a boomrest (a large metal structure

---

[80] 667 F.2d at 329; *see also Bunn*, 723 F.3d at 462 (quoting *Howlett*, 512 U.S. at 97–98) ("Holding a shipowner liable for promising, but failing, to remedy a dangerous condition comports with 'accepted principles of tort law,' which inform a shipowner's duties under the Act.").
[81] 687 F.2d 318 (9th Cir. 1982).
[82] *Bueno*, 687 F.2d at 320.
[83] *Id.* at 320–21.
[84] 738 F.2d 1049, 1050 (9th Cir. 1984).
[85] 738 F.2d at 1050.

*Nystrom v. Khana Marine Ltd., et al.*                                        Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                       Page 16
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 16 of 32

that supports the ship's boom) lying on the deck such that anyone crossing the deck had to climb over or slide underneath the hatchcovers or boomrest.[86] Snow and ice later fell, making the deck slippery.[87] When the plaintiff, a longshore worker, attempted to climb the boomrest during his shift, he slipped and fell, injuring his leg.[88] Citing *Bueno*, the court determined that the ship's crewmembers "had the duty to exercise the same reasonable care required of a stevedore to protect workers who would be continuing longshore operations on board."[89]

These cases support a rule that, when a vessel's crewmembers affirmatively undertake a duty typically reserved for the stevedore, they must exercise reasonable care. In this case, the Vessel's crewmembers affirmatively undertook, or at least shared in, the longshore workers' duty to remove ice from Hold 3's walking surface. Under this Circuit's guidance, Murphy's statement that the stevedore ultimately bears responsibility for removing the ice cannot strip Defendants of their duty to act with due care under the circumstances.[90] In attempting to remove the ice, the Vessel therefore assumed the duty to exercise "the same reasonable care required of a stevedore to protect workers who would be continuing longshore operations on board."[91]

---

[86] *Id.*
[87] *Id.*
[88] *Id.*
[89] *Id.* at 1052 (citing *Bueno*, 687 F.2d at 320).
[90] Docket 34-1 at 7, ¶ 22. Murphy's declaration states: "The gang boss can also ask the ship's crew to assist in removing the ice. But the responsibility for removing ice that has formed on a cargo hold deck lies with the gang boss, not with the ship's crew. If the ship's crew does not remove the ice when requested, the gang boss will arrange for longshore workers to do so." *Id.*
[91] *Ollestad*, 738 F.2d at 1052.

*Nystrom v. Khana Marine Ltd., et al.*                                        Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                  Page 17
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 17 of 32

Ordinarily, the question of whether the crewmembers acted negligently in their efforts to remove the ice would be a question for the trier of fact to determine at trial, rather than a court on a summary judgment motion.[92] The Court's inquiry cannot end there, however, because the turnover duty has a temporal limitation. The duty "relates to the condition of the ship *upon the commencement* of stevedoring operations."[93] There is no evidence in the record indicating that the crewmembers were engaged in removing the ice from Hold 3 prior to or at the time the longshore workers began conducting the stevedoring operations "several hours before" Plaintiff's injury occurred.[94] Indeed, if Hold 3 had not been opened until approximately 45 minutes before the longshore workers began their work in that hold that night, as Plaintiff testified, it seems unlikely that the Vessel's crewmembers would have been in that hold when the stevedoring operations began.[95] Instead, the Vessel's crewmembers were working to remove the ice at around the same time Plaintiff entered Hold 3 and while he was working therein, meaning that the crewmembers' affirmative undertaking of the ice removal took place, or at least remained ongoing, after the commencement of the stevedoring operations. Defendants' alleged breach of this duty therefore cannot fall under the orbit of the turnover duty and is better placed, if anywhere, under the active control duty.[96]

_____

[92] *See Thomas*, 42 F.2d at 1269.
[93] *Howlett*, 512 U.S. at 98 (emphasis added) (citing *Scindia*, 451 U.S. at 167).
[94] Docket 34 at 12.
[95] Docket 34-2 at 8:16–17.
[96] *See Howlett*, 512 U.S. at 98 (emphasis added) (citing *Scindia*, 451 U.S. at 167) ("The second duty, *applicable once stevedoring operations have begun*, provides that a shipowner must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel.'").

*Nystrom v. Khana Marine Ltd., et al.*                                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 18
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 18 of 32

Neither case Plaintiff cites compels a different result. In *Bunn*, the crewmembers' promise to address the vessel's slippery conditions took place "before the loading operation started," not afterwards.[97] That case indisputably implicated the turnover duty, whereas this one does not because there is no evidence that the crewmembers made a promise or assumed an affirmative obligation before turnover. In *Lieggi*, it appears that the promise to remove the equipment causing the plaintiff's injuries might have been made after the stevedoring operations began, even if the hazardous condition and alleged negligence arose beforehand.[98] In any event, the *Lieggi* court appears to have applied an early conception of the active control duty, as the court does not mention the turnover duty once.[99] To the extent Plaintiff offers *Lieggi* as a factual comparison, it follows that this case similarly would not turn on an interpretation of the turnover duty.

Because Defendants' actions took place after the crewmembers turned over the Vessel and Plaintiff has not offered any evidence to refute Murphy's statements concerning an expert and experienced stevedore's ability to work on icy surfaces on a reefer vessel in Dutch Harbor, Plaintiff's claims alleging a breach of the turnover duty of safe

---

[97] *Bunn*, 723 F.3d at 457.

[98] *See Lieggi*, 667 F.2d at 325–57 (noting the vessel's crewmembers "periodically" applied grease to the equipment, which had been left out "earlier in the day by a different gang of longshoremen").

[99] *See id.* at 327 ("[The Supreme Court] left unclear exactly what duty the shipowner owes the longshoremen once cargo operations, over which the stevedore generally has primary control, have begun."). *Lieggi* was decided only several months after *Scindia* and 13 years before *Howlett*, at a time when the courts had not yet explored fully the contours of the three primary duties vessels owe longshore workers. *See id.* (citing *Scindia*, 451 U.S. 156) ("The Supreme Court has spoken definitively only as to a segment of the vessel owner's liability under [Section 905(B)].").

*Nystrom v. Khana Marine Ltd., et al.*                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 19
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 19 of 32

condition must fail.[100]  Plaintiff's reliance on *Ingersoll* does not change this outcome.[101]

In *Ingersoll*, the plaintiff moved for summary judgment against a shipowner based on deposition testimony positing that the shipowner breached the turnover duty of safe condition by failing to maintain the ship's deck in an ice-free condition.[102]  Judge Sedwick rejected the deposition testimony because he found the proffered expert to be unqualified and his testimony unclear.[103]  As a result, the plaintiff failed to meet her burden of showing that no genuine dispute of a material fact existed.[104]

Here, by contrast, Defendants provided clear testimony from a qualified expert directly addressing an expert stevedore's ability to navigate icy conditions on a reefer vessel in Dutch Harbor.  Plaintiff offered no expert testimony to dispute Murphy's declaration.  The excerpts Plaintiff cites of deposition testimony from Captain Chong and

---

[100]  *See, e.g.*, Docket 34-1 at 5, ¶ 16 ("Pacific Stevedore longshore workers are experienced in [icy] conditions and trained to work safely around them and, if it is not possible to work around these conditions, to ensure that the ice is safely cleared before continuing their work.").  In his declaration, Murphy speaks at a high level and does not directly address the specific circumstances present on April 29 and April 30 leading to Plaintiff's injury.  Although his declaration would have provided stronger support for Defendants' motion if it presented a fact-specific analysis to support Murphy's conclusions, the working conditions Murphy characterizes as reasonable for longshore workers in Dutch Harbor match the conditions described in the factual portions of the record, such as Plaintiff's deposition.  *Compare id.* at 3–5 ¶¶ 9–10, 13–17 (describing the regularity with which PacSteve longshore workers in Dutch Harbor work around icy and slippery conditions in cargo holds after rain and snowfall), *with* Docket 34-2 at 37:9–15 (Gumera's description of icy conditions that PacSteve workers encounter in frozen holds), *and* Docket 35 at 30 (Plaintiff's description of the icy conditions in Hold 3).  At no point in Plaintiff's briefing does he dispute any portion of Murphy's declaration or offer convincing evidence to refute its content.  *Cf. Thomas, 42 F.3d at 1269–70* (reversing district court's exclusion of expert testimony explaining vessels' customs for covering deck openings or manholes).

[101]  *See* Docket 35 at 11 (citing *Ingersoll* to support argument that "the Court should not jump to any conclusions as to the reasonableness of the hazard on the floor of the hold at issue, but, rather, should deny summary judgment to properly allow the trier of fact to resolve the issue").

[102]  *Ingersoll*, 2004 WL 3363407, at *2.

[103]  *Id.*

[104]  *Id.*

*Nystrom v. Khana Marine Ltd., et al.*                                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 20
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 20 of 32

Chief Mate Ryu Young Woo appear to lack context, are cherry picked, and do not contradict Murphy's statements.[105] For example, Captain Chong and Woo merely confirm that the Vessel's crewmembers attempted to remove the ice from Hold 3, and Captain Chong provided his understanding of the hypothetical process the crewmembers and stevedore take to determine whether to stop work when conditions are unsafe.[106] These statements merely recount factual circumstances or speak generally about the manner in which decisions might be made on an icy vessel. They do not establish the general duty of care that an expert and experienced stevedore would expect a vessel to fulfill when it hires a stevedoring company to load or unload cargo in Dutch Harbor. The Court finds that Plaintiff has failed to meet his burden as the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[107]

Similarly, Plaintiff's claim alleging a breach of the turnover duty to warn must fail. This duty "attaches only to latent hazards, defined in this context as hazards that would be neither obvious to nor anticipated by a competent stevedore in the ordinary course of cargo operations."[108] Plaintiff acknowledged that the icy conditions were obvious to

---

[105] *See generally* Docket 35 at 15–23.

[106] Docket 35 at 16, 18–20 (Chong Dep.); Docket 35 at 22–23 (Woo Dep.).

[107] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citing Fed. R. Civ. P. 56(e)); *see also Marable v. United States*, No. 14cv1206-WQH-KSC, 2017 WL 6541021, at *6–7 (S.D. Cal. Dec. 21, 2017) (finding plaintiffs failed to refute testimony from shipowner defendant's expert on whether a ladder's outboard handrail presented an unreasonably dangerous condition to an experienced ship repair person).

[108] *Howlett*, 512 U.S. at 99; *see also Scindia*, 451 U.S. at 167 (citation omitted) ("This duty extends . . . to warning the stevedore of any hazards on the ship . . . that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work."); *Ludwig v. Pan Ocean Shipping Co.*, 941 F.2d 849, 851 (9th Cir. 1991) (ruling that shipowner had no duty to warn longshore workers of the obvious hazards posed by a coiled cable and snatch blocks located at the bottom of a ladder).

*Nystrom v. Khana Marine Ltd., et al.*                                          Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                          Page 21
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 21 of 32

him and that he was aware of them when he entered Hold 3 after receiving a warning from his gang boss.[109]  Therefore, Defendants had no duty to warn Plaintiff of the obvious slip hazard posed by the ice or that Hold 3's walking surface would continue to be slippery throughout his shift.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims that they breached the turnover duty of safe condition and the turnover duty to warn.

## C.    The Active Control Duty

The active control duty establishes a limited standard of care that a vessel owes to stevedores once stevedoring operations begin.[110]  Under the active control duty, a vessel "must exercise reasonable care to prevent injuries to longshoremen in areas that remain under the 'active control of the vessel'" during the stevedoring operations.[111]  A vessel also may be liable if "it actively involves itself in the cargo operations and negligently injures a longshoreman."[112]

The parties' main areas of disagreement are whether the Vessel's crewmembers had active control of Hold 3 or actively involved themselves in the cargo operations in a way that negligently injured Plaintiff.  If there is a genuine dispute of material fact as to either of these issues, summary judgment would be improper. Defendants contend that "[t]here is no evidence or even allegation that the vessel's crew

---

[109]  *See, e.g.*, Docket 34-2 at 8:2–5 ("[Gumera] told us – when we opened that hold, he told us . . . 'It's a new hold.  It's going to be slippery.  You need to watch this.'").

[110]  *Howlett*, 512 U.S. at 98; *Onorato v. China Shipping Container Lines Co.*, No. CV 08-4574 CAS (PJWx), 2009 WL 10671029, at *11 (C.D. Cal. Oct. 1, 2009) (citing *Howlett*).

[111]  *Howlett*, 512 U.S. at 98.

[112]  *Bjaranson*, 873 F.2d at 1207 (quoting *Scindia*, 451 U.S. at 167).

*Nystrom v. Khana Marine Ltd., et al.*                                                      Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                      Page 22
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 22 of 32

actively involved itself in PacSteve's operations beyond ensuring that the cargo was stowed according to the stowage plan."[113]  They argue that the crewmembers' efforts to break up and remove the ice from the Hold 3's walking surface did not constitute active control of the hold or dictate the way in which the longshore workers could complete their work.[114] In other words, the longshore workers were free to work as they saw fit.[115]  Defendants also maintain that Plaintiff has not offered any evidence that the crewmembers' affirmative actions taken after turnover negligently caused Plaintiff's injuries.[116]  In response, Plaintiff acknowledges that Defendants "may not have maintained control over the entire operation," but asserts the crewmembers actively controlled "the floor under the feet of the longshoremen."[117]  Plaintiff also points to statements Captain Chong made during his deposition purportedly demonstrating that the crewmembers retained authority to halt the stevedoring operations if the ice presented unavoidable hazards to the longshore workers.[118]

Turning to the record, it is unclear whether the crewmembers controlled the stevedoring operations at the time of Plaintiff's injury.  Woo, the chief mate, testified that it was the crewmembers' "job to supervise the entire thing," referring to the loading operations.[119]  The crewmembers' mere presence and supervision of the loading activities to confirm compliance with the stowage plan is insufficient, without more, to constitute

---

[113] Docket 34 at 27.
[114] Id.
[115] See id. (citing Rich v. U.S. Lines, Inc., 596 F.2d 541, 550 (3d Cir. 1979)).
[116] Id.
[117] Docket 35 at 13.
[118] Id.
[119] Docket 34-2 at 76:3–6.

Nystrom v. Khana Marine Ltd., et al.                                              Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                        Page 23
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 23 of 32

active control.[120]  At the very least, though, the record supports an inference that the Vessel's crewmembers actively involved themselves in the longshore workers' operations by working alongside them in Hold 3 as the longshore workers unloaded the cargo at the time Plaintiff was injured.[121]  More importantly, the crewmembers broke up and swept away the ice that inhibited the longshore workers' ability to load the cargo safely.[122]  As the deposition testimony and Murphy's declaration demonstrate, the crewmembers were participating in a task typically reserved for, or at least which was the ultimate responsibility of, the longshore workers.[123]  Defendants are correct that the record does not unequivocally show that the crewmembers controlled the cargo operations, but they cannot demonstrate that this issue is undisputed.  When viewed in the light most favorable to Plaintiff, the record before the Court supports an inference that, by breaking up the ice and sweeping it to the side of the hold as the longshore workers worked, the crewmembers exhibited at least concurrent control over the longshore workers' walking surface and, by

---

[120]  *See Haines v. Honolulu Shipyard, Inc.*, 125 F. Supp. 2d 1020, 1029 (D. Haw. 2000) (finding that the presence of a crewmember aboard the vessel during loading operations did not establish that the crewmembers had "active control" of the vessel).

[121]  *See* Docket 34-2 at 14–15 (noting that two crewmembers were in Hold 3 at the time of the accident); Docket 35 at 22:9–12 (confirming that "the ship's crew members were on continuous de-icing tasks" in Hold 3); *Scindia*, 451 U.S. at 167 ("[T]he vessel may be liable if it actively involves itself in the cargo operations and negligently injures a longshoreman or if it fails to exercise due care to avoid exposing longshoremen to harm from hazards they may encounter in areas . . . under the active control of the vessel during the stevedoring operation."); *Howlett*, 512 U.S. at 98.

[122]  Docket 35 at 22.

[123]  Docket 34-1 at 7, ¶ 22 (Murphy Decl.); Docket 34-2 at 45:12–25 (Gumera Dep.).

*Nystrom v. Khana Marine Ltd., et al.*                                            Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment            Page 24
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 24 of 32

extension, the ongoing stevedoring operations.[124]  Put differently, without addressing or

avoiding the ice, the longshore workers could not complete their jobs safely.  By inserting

themselves into the ice removal efforts, the Vessel's crewmembers exerted some control

over the longshore workers' ability to work in and navigate Hold 3.  Courts have found

that a vessel's exercise of concurrent control over an area or operation along with longshore

workers is sufficient to trigger the active control duty.[125]

Furthermore, Defendants' reliance on *Rich* is misplaced because Defendants

inaccurately recite the facts of that case.  Defendants contend in their brief that, in *Rich*,

"there was evidence that [the] vessel crew voluntarily cleaned up some ice, but no evidence

that they retained control over the stevedore's work."[126]  The pincitation Defendants

---

[124]  Gumera's deposition demonstrates that the crewmembers retained some authority over the ice removal efforts:

> Q.  Okay.  In some prior depositions taken of the captain, and I guess, the first mate or executive officer, they said that their crew used some wooden mallets or hammers to break up ice to help clear it off the deck.  Do you recall seeing that when you worked on the Suah?
> A.  Yes.  That's – that's what they use to break – to clear the ice, to break the ice.
> Q.  Okay.  Is that done by the ship's crew, or is that done by the stevedores, breaking the ice?
> A.  That's – that's the ship crews.  We always – if ice builds up on the floor, we always – I always call the chief or whoever, the crew in there, in the hatch to start breaking it.

Docket 34-2 at 37:16–38:5.

[125]  *See Tucker v. Cascade Gen., Inc.*, No. 3:09-CV-1491-AC, 2014 WL 6085829, at *22 n.11 (D. Or. Nov. 13, 2014) (citations omitted) ("Even if the court were to find the [shipowner] and [maintenance and repair contractor] shared control over the hatch cover, courts in those instances consistently hold the *Scindia* active-control duty is implicated."); *Moore v. M.P. Howlett, Inc.*, 704 F.2d 39, 40–41 (2d Cir. 1983) (upholding jury verdict in favor of longshore worker who slipped on an obviously greasy, icy deck while the stevedore and vessel's crewmembers jointly controlled and operated a barge-crane).

[126]  Docket 34 at 27.

*Nystrom v. Khana Marine Ltd., et al.*                                                    Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                     Page 25
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 25 of 32

provide contains what appears to be the vessel captain's general synopsis of the crewmembers' responsibility for alleviating slippery conditions, not a recitation of what the crewmembers did in that particular case.[127] The facts of that case instead indicate that the stevedore asked the vessel's crewmembers to provide rock salt or another nonskid material to eliminate slippery conditions on top of shipping containers, but the vessel's crewmembers did not provide any such materials.[128] There is no indication from the court's opinion that the crewmembers promised to take, or actually took, any steps to address the ice.[129] Those facts contrast with those of this case, where the Vessel's crewmembers

---

[127] *See Rich*, 596 F.2d at 549–50. The relevant paragraph of the opinion reads:

> Captain Kenneth Mistry's testimony was more detailed. He stated that the chief officer of a ship is in charge of cargo operations and in that capacity instructs the longshoremen which containers are to be loaded, removed or shifted around. In addition, the officer must keep the ship in a condition to receive and discharge cargo and is in charge of general ship maintenance. As part of these duties, the chief officer, or those to whom his powers are delegated, must always be concerned that the vessel is safe for both the longshoremen and crew members. *Captain Mistry further testified that he had followed procedures whereby slippery conditions either on the deck or on top of the cargo left exposed to the weather were remedied by the ship's crew* and that in his opinion, the dangerous conditions of the containers should have been alleviated by the ship's personnel since they alone were aware of the weather conditions encountered during the voyage to Philadelphia and since they were aware that the longshoremen would be walking on top of the containers.

*Id.* (emphasis added). The emphasized text above ostensibly is that to which Defendants refer, but when read in the broader context of that paragraph and the opinion's fact section, it becomes clear that the facts adopted by the court revealed that the crewmembers did not affirmatively try to remove the ice on top of the cargo containers that resulted in the plaintiff's injury. *Id.* at 543–44.

[128] *See id.* at 543–44 ("[The stevedore superintendent] stated that the stevedore had a spare supply of nonskid material in a gear locker about 800 feet from the ship. There is no evidence that this was used to remedy the slippery condition of the containers.").

[129] *Id.*

*Nystrom v. Khana Marine Ltd., et al.*                                        Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 26
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 26 of 32

affirmatively worked alongside the longshore workers in Hold 3 with every intention of addressing the ice under their feet.

Defendants nevertheless argue in their reply that no "reasonable juror could conclude that the vessel crew actively controlled the stevedore's operational area."[130] However, "a finding of active control is supported by . . . testimony indicating that the crew generally remained on the affected portion of the deck during the stevedore's unloading operations and that the crew was responsible for maintaining the deck . . . ."[131] It is undisputed that the Vessel's crewmembers remained in Hold 3 with the longshore workers while they worked and that the crewmembers took it upon themselves to remove the ice on the deck, even if they were asked to do so. Although the PacSteve longshore workers or their employer may have—by custom, statute, regulation, or otherwise—responsibility for ensuring that they safely navigated the slippery conditions, that responsibility does not relieve the crewmembers from their responsibility to perform the task they affirmatively undertook without negligence.[132] This affirmative undertaking, coupled with the chief

---

[130] Docket 36 at 10.

[131] *Davis v. Portline Transportes Mar. Internacional*, 16 F.3d 532, 541 (3d Cir. 1994).

[132] *See supra* Part III.B. (interpreting *Bueno v. United States*, 687 F.2d 318 (9th Cir. 1982), and *Ollestad v. Greenville S.S. Corp.*, 738 F.2d 1049, 1050 (9th Cir. 1984), as imposing duties on a vessel when its crewmembers affirmatively undertake actions typically reserved for longshore workers). As for Defendants' argument that the LHWCA and its implementing regulations expressly impose a duty to remove ice on the stevedore, rather than the vessel owner, courts have made clear that those duties are not exclusive. This Circuit directly addressed this argument in *Subingsubing v. Reardon Smith Line, Ltd.*, 682 F.2d 779, 780 (9th Cir. 1982) (citations omitted):

> Although the Safety and Health Regulations [implementing the LHWCA] impose a duty on stevedores, there is no reason to suppose that it is an exclusive duty. Indeed, the Safety and Health Regulations provide that they do not relieve "owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom." A negligent

---

*Nystrom v. Khana Marine Ltd., et al.*                                              Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                              Page 27

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 27 of 32

mate's testimony that the crewmembers were supervising the loading operation, is sufficient to create a genuine issue of material fact as to whether the Vessel actively controlled or was actively involved in the stevedoring operations.[133]  Murphy's generalized statements to the contrary—such as his assertion that "the crew do not actively participate in loading the cargo and they do not supervise or direct Pacific Stevedoring workers regarding their work loading the cargo"—do not demonstrate the absence of a genuine dispute when the record indicates otherwise.[134]  In essence, Defendants rely on a declaration that fails to address the specific circumstances leading to Plaintiff's injury, or refute Woo's statement about the crewmembers' supervision of the loading operations. This cannot be a basis upon which to grant summary judgment.

Murphy also cannot vitiate the Vessel's duty to adequately treat the ice once the crewmembers took it upon themselves to assist.  Even if his generalizations accurately reflected the factual circumstances, "proof of adherence to an industry practice or custom is not dispositive on the issue of negligence."[135]  The Court finds that a genuine dispute

---

shipowner's liability may be reduced, but that liability is not eliminated, by the negligence of the stevedore and the longshoreworker.

The safety and health regulations cited in *Subingsubing* have been amended since that decision, but courts continue to reaffirm that the regulatory duties imposed on stevedores are not exclusive of those imposed on vessel owners.  *See Martinez v. Korea Shipping Corp.*, 903 F.2d 606, 611 (9th Cir. 1990) (footnote omitted) (citing *Subingsubing*, 682 F.2d at 780) ("Although OSHA standards only impose a duty on stevedores, this court has held that it is not an exclusive duty."); *Abruska v. Northland Vessel Leasing Co.*, 258 F. App'x 158, 161 n.3 (9th Cir. 2007) (citing *Martinez*, 903 F.2d at 611); *Robie v. S. Marine Constr. Co.*, No. 10-7-DLB-CJS, 2013 WL 188577, at *10 n.5 (E.D. Ky. Jan. 17, 2013) (citing *Subingsubing*, 682 F.2d at 780).

[133]  *See* Docket 34-2 at 76:3–10 (confirming the crew's supervision of the loading operations).

[134]  Docket 34-1 at 8 ¶ 24.

[135]  *Martinez*, 903 F.2d at 610 (citations omitted).

*Nystrom v. Khana Marine Ltd., et al.*                                        Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                    Page 28

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 28 of 32

exists as to whether the Vessel's crewmembers actively controlled Hold 3 or actively involved themselves in the stevedoring operations.[136]

Defendants alternatively argue that, even if the crewmembers were actively involved in the stevedoring operations, there is no evidence that they acted negligently.[137] It may be the case that the crewmembers did not negligently break and sweep the ice or that their actions did not cause Plaintiff's injuries. However, Defendants fail to establish the lack of a dispute of a material fact on the issue, a burden they bear as the parties moving for summary judgment.[138] Plaintiff, meanwhile, presented testimony supporting an inference that the crewmembers may have acted negligently in removing the ice:

> Q  What were they doing with those mallets, the two crew members?
> A  A little bit of tippy-tap here and there. There wasn't – a lot of crew complained about, "Hey, this floor is slippery. It needs to be done," and they were basically going fore and aft as we changed positions on the dolly. If we pushed the dolly aft, they would go to the fore end of the – the – the hold itself and kind of beat at the ice. Then we would drop a load, we

---

[136] Defendants' citation in their reply to the unpublished *Abston v. Jungerhaus Mar. Servs. GmbH.*, 664 Fed. App'x 378, 381 (5th Cir. 2016), and other cases does not change this outcome. Docket 36 at 10–11. *Abston* is neither binding on this court nor dispositive given the factual issue of "whether the vessel owner control[led] the methods and operative details of the stevedore's work." *Abston*, 664 Fed. App'x at 381. As explained above, Plaintiff has pointed to evidence in the record that the Vessel's crewmembers supervised the loading operations and may have exerted control over details of the longshore worker's work since the crewmembers worked alongside the longshore workers to address the very conditions that dictated how the workers could perform their job safely on the night in question. As Defendants point out, certain portions of the record suggest that the crewmembers "stayed out of the way" of the longshore workers and did not control their work, but this issue is far from settled based on the record currently before the Court. Docket 36 at 11 (citing Docket 34-2 at 18:4–9). That the crewmembers were "usually" 20 feet away from the longshore workers does not mean they did not share control of the walking surface on which the longshore workers worked, especially since both groups appeared to have been actively moving around throughout the loading operation. Docket 34-2 at 18:1–9.

[137] Docket 34 at 28; Docket 36 at 11.

[138] Fed. R. Civ. P. 56(a).

would go, say, forward of where we were. They would go to the opposite end and kind of chip and beat at the ice.[139]

Gumera's testimony also offers some indication that the crewmembers may not have addressed the ice in a satisfactory manner:

> Q. Okay. So with respect to the patch of ice that Mr. Nystrom slipped on, were you aware that that patch of ice was there before he slipped?
>
> A. No. We don't – we don't – I don't see that. I – I didn't realize that.[140]

These statements, and others like them in the record, reflect a genuine dispute as to whether Defendants negligently failed to remove the ice that caused Plaintiff's injuries. Notwithstanding Gumera's admission that he did not ask the crewmembers to remove the particular spot of ice on which Plaintiff slipped, the Court must view the facts in the light most favorable to Plaintiff.[141] Such a view suggests that the longshore workers did not ask the crewmembers to remove that particular patch of ice because they assumed the crewmembers had taken care of it or were lulled into a false sense of security based on what the crewmembers were actively doing around them. The facts might bear out a different version of the precise circumstances leading to Plaintiff's injury, perhaps showing that Plaintiff did not or could not reasonably rely on the crewmembers to remove the ice in his immediate workspace or that it was unreasonably risky for him to carry the cargo himself without use of a trolley, as Defendants allege.[142] But it is not proper for the Court

---

[139] Docket 35 at 31:25–32:10.
[140] Docket 34-2 at 51:20–24.
[141] Docket 34-2 at 51:25–52:4.
[142] Docket 34 at 27.

*Nystrom v. Khana Marine Ltd., et al.*      Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment      Page 30
Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 30 of 32

to construe a version of the facts favoring Defendants at the summary judgment stage when the parties have presented an incomplete record and a jury could find that Plaintiff had no reason to anticipate untreated ice where he slipped, even if the ice had been obvious to him when he entered the hold.[143]   Likewise, the Court cannot at this juncture evaluate Defendants' suggestion that Plaintiff's own negligence caused his injuries.[144]   The principles of comparative negligence apply to maritime law, so if there is any possibility that Defendants were negligent, as there is here, the Court cannot conclude as a matter of law that Defendants are entitled to summary judgment.[145]

Accordingly, Defendants are not entitled to summary judgment on Plaintiff's claim that Defendants breached the active control duty.

## IV.   CONCLUSION

In light of the above, Defendants' *Motion for Summary Judgment* at Docket 34 is **GRANTED IN PART** and **DENIED IN PART**.  Plaintiff's claims alleging

---

[143]   *See Bunn*, 723 F.3d at 464 ("[A]ccordingly, a jury could find that neither CNX (the stevedore) nor Bunn (the longshoreman) had reason to anticipate untreated ice aboard the ship, even though one might otherwise have expected such a hazard following a winter storm."); *Scheuring*, 476 F.3d at 791 (citations omitted) ("[T]he question [of] whether a defendant acted reasonably is ordinarily a question for the trier of fact.").  The Court also notes that the record contradicts Defendants' intimation that the icy conditions may have been "hazards about which the vessel has no actual or constructive knowledge."  Docket 34 at 28 (citations omitted).  Both Captain Chong and Woo acknowledged that Hold 3 was icy on the night in question, so Defendants were well aware of the obvious hazard.  Docket 34-2 at 59:6–17; Docket 35 at 22:9–12.
[144]   *See* Docket 34 at 27 ("[I]t is unclear why Plaintiff decided to grab a 50 pound box and walk across a surface he claims he knew was icy.").
[145]   *See Davis*, 16 F.3d at 540 (first citing *Socony–Vacuum Oil Co. v. Smith*, 305 U.S. 424, 431 (1939); then citing *Sosebee v. Rath*, 893 F.2d 54, 55 n.2 (3d Cir. 1990); and then citing *The Max Morris v. Curry*, 137 U.S. 1, 14–15 (1890)) (reversing district court's grant of summary judgment because a jury could find that the shipowner defendant was at least partially negligent in creating an icy spot on the deck of a ship).

*Nystrom v. Khana Marine Ltd., et al.*                                      Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment          Page 31

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 31 of 32

a breach of the turnover duty are dismissed with prejudice. Plaintiff's claims alleging a breach of the active control duty withstand summary judgment.

IT IS SO ORDERED this 15th day of February, 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Nystrom v. Khana Marine Ltd., et al.*                                                                  Case No. 3:20-cv-00098-JMK
Order Granting in Part and Denying in Part Motion for Summary Judgment                                   Page 32

Case 3:20-cv-00098-JMK   Document 37   Filed 02/15/23   Page 32 of 32